**James PRITCHETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. A14–92–01129–CR, A14–92–01130–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 10, 1994.

Rehearing Overruled March 31, 1994.

Kenneth P. Mingledorff, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before MURPHY and ELLIS, JJ., and WILLIAM E. JUNELL, J. (Retired).*

## OPINION

MURPHY, Justice.

Appellant entered a plea of not guilty before a jury to two counts of aggravated robbery, TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1994). The plea stemmed from two separate indictments which were joined for trial at the request of the State and with the consent of appellant. The jury found appellant guilty on both counts, and the court sentenced appellant to life imprisonment for each case. Appellant brings eight points of error, complaining of the trial court's making an affirmative finding of use of a deadly weapon, the admission of irrelevant and prejudicial evidence, the admission of hearsay, ineffective assistance of counsel, and failure of the trial court to include a jury charge on a lesser included offense. We affirm.

Charlene Dowding worked for Industry Federal Credit Union, where one of her duties was to perform all of the credit union's banking. On the morning of November 22, 1991, she went to a bank and picked up $8001.00 in cash for use at the credit union. When she arrived back at the credit union's parking lot and opened her car door, she heard someone say "Give me your money." She turned and saw appellant holding a gun pointed at her head. Ms. Dowding handed him the bank bag, but he also pulled the purse off her arm and said "Give me the rest of your money." When she told him he had all the money, his companion sprayed her with mace and the two men fled.

On the morning of January 17, 1992, Theresa Patterson and Leon Horowitz were working in Mr. Horowitz's pawn shop. Appellant and a companion, later identified as Lee Blackshear, entered the shop and asked Ms. Patterson about a layaway. While Ms. Patterson was checking on the layaway, the men pulled out guns and ordered her and Mr. Horowitz to lie on the floor. The two men started kicking the jewelry showcase, but when it did not break, Blackshear asked Mr. Horowitz how to open the case. Mr. Horowitz told him there was a key in the drawer. Blackshear took the key and laid his gun in the drawer while he opened the case. Mr. Horowitz took that opportunity to hit the alarm button, drew his own gun and shot Blackshear. When his accomplice was shot, appellant went over to Ms. Patterson and stamped his foot on her back to hold her down while he shouted for Blackshear to throw him his gun. He also continued pointing his own gun at Mr. Horowitz, repeating "I'll kill you, I'll kill you," but the bullets in his gun kept falling out onto the floor. Mr. Horowitz kept his gun pointed at appellant and directed him to take his companion outside and wait for the police. Both Mr. Horowitz and Ms. Patterson then held appellant at gunpoint, but he started running and escaped before the police arrived. Blackshear died approximately one week later as a result of his wounds.

Based on a tip from an informant, the police arrested appellant for both robberies, and he was positively identified by Ms. Dowding, another witness to the credit union robbery, Ms. Patterson, and Mr. Horowitz. Because the two separate cases were tried together, and share a single statement of facts, they are combined for appeal as well. In the interest of clarity, we will refer to Cause no. 618,525 as the "credit union rob-

---

* Retired Justice Junell sitting by designation of the     Texas Supreme Court.

bery," and Cause no. 621,734 as the "pawn shop robbery."

## AFFIRMATIVE FINDING ON USE OF A DEADLY WEAPON

In his first and second points of error, appellant maintains that the affirmative finding that a deadly weapon was used in the credit union and pawn shop robberies must be deleted, because the trier of fact never made a specific finding that appellant personally used a deadly weapon.

Both indictments charged that appellant "used and exhibited a deadly weapon, to-wit, a FIREARM," and in both cases the jury found appellant guilty "as charged in the indictment." However, identical language in the jury charges for each case allowed the jury to convict appellant if he was acting individually, or as a party to the offense,[1] and no special issue on appellant's personal use of a deadly weapon was submitted to the jury in either case. Appellant elected to have the judge assess punishment. At the punishment hearing for both cases, the State did not reoffer the evidence from the guilt/innocence phase of the trial. On the State's request, the trial judge granted the State an "[a]ffirmative finding in each [case]," but he did not make a specific finding that appellant personally used or exhibited a deadly weapon, or knew that one would be used. On each written judgment, the judge appears to have used a stamp of some sort which states that a firearm "was used" during the commission of the offense.

Generally, the trial court may properly enter an affirmative finding on the use of a deadly weapon when the indictment alleges the use of a deadly weapon, the weapon is deadly per se, or the jury affirmatively answers a special issue on the use of a deadly weapon. *Polk v. State,* 693 S.W.2d 391, 394 (Tex.Crim.App.1985); *Skinner v. State,* 837 S.W.2d 718 (Tex.App.—Fort Worth 1992, pet.

ref'd); *Weaver v. State,* 855 S.W.2d 116, 122 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *but see Ex parte Franklin,* 757 S.W.2d 778 (Tex.Crim.App.1988). When the judge is the trier of fact at the punishment stage of the trial, he has the authority to make an affirmative finding if the facts show, and he believes, that the defendant himself used or exhibited a deadly weapon, even if the jury has not answered a special issue. *Fann v. State,* 702 S.W.2d 602, 604 (Tex.Crim.App. 1985) (opinion on reh'g); *Flores v. State,* 690 S.W.2d 281, 283 (Tex.Crim.App.1985). This is true even if the State did not reoffer the evidence adduced at the guilt/innocence stage, as long as the judge assessing punishment is the same judge who presided at trial. *See Tamminen v. State,* 653 S.W.2d 799, 802 (Tex.Crim.App.1983); and *Wright v. State,* 468 S.W.2d 422, 425 (Tex.Crim.App.1971). However, when the jury is instructed on the law of the parties, the affirmative finding must show that *the appellant* used or exhibited the deadly weapon, *Flores,* 690 S.W.2d at 283 (emphasis in original), or that appellant *knew* that a deadly weapon would be used or exhibited. TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3g(a)(2) (Vernon Supp.1994) (emphasis added).

In *Flores,* the Court of Criminal Appeals affirmed the deletion of the affirmative finding, because the jury was instructed on the law of parties, returned a general guilty verdict, and the judge entered a finding that a deadly weapon "was used" in the commission of the offense. The deletion was proper because it was impossible for the Court to determine which theory the jury used to conclude that the appellant was guilty, individually or as a party, and the trial court did not specify in the judgment that *the appellant* used or exhibited a deadly weapon. *Flores,* 690 S.W.2d at 283. In order to adequately address appellant's points of error and follow the Court's reasoning in *Flores,*

---

1. The jury charges read in pertinent part:

    Now, if you find from the evidence beyond a reasonable doubt that ... the defendant, James Pritchett, *did then and there ... use or exhibit a deadly weapon, to-wit, a firearm; or* if you find from the evidence beyond a reasonable doubt that ... *another person or persons did then and there ... use or exhibit a deadly weapon, to-wit,*

    *a firearm,* and that the defendant, James Pritchett, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid the other person or persons to commit the offense, if he did, then you will find the defendant guilty as charged in the indictment. (Emphasis added.)

we must separately analyze the evidence presented at trial as to each of the two individual offenses.

In the pawn shop robbery, there was evidence that both participants used and exhibited weapons, but that appellant's accomplice held Mr. Horowitz at gunpoint in another part of the shop. Thus, we have evidence from which the jury could have convicted appellant either as a primary actor or as a party in placing Mr. Horowitz in fear of his life, and we are unable to determine under which theory the jury found appellant guilty. Because the trial court did not specify that appellant personally used or exhibited the deadly weapon, or knew that a deadly weapon would be used or exhibited in the pawn shop robbery, as required by Article 42.12, § 3g, we must therefore reform the judgment to delete the finding of a deadly weapon in Cause no. 621,734, the pawn shop robbery. *Polk,* 693 S.W.2d at 396; *Weaver,* 855 S.W.2d at 123. We sustain appellant's second point of error.

On the other hand, although the jury was charged in the credit union robbery that it could find appellant guilty as a primary actor or as a party, such a charge was unnecessary. *See Govan v. State,* 682 S.W.2d 567 (Tex.Crim.App.1985), *overruled on other grounds,* 716 S.W.2d 939 (Tex.Crim. App.1986) (finding inclusion of definition of the law of the parties in jury charge unnecessary and therefore harmless error, where evidence clearly showed appellant was the principal actor); *see also McCuin v. State,* 505 S.W.2d 827 (Tex.Crim.App.1974); and *Black v. State,* 723 S.W.2d 674, 675 (Tex. Crim.App.1986). In *Travelstead v. State,* 693 S.W.2d 400, 402 (Tex.Crim.App.1985), the Court of Criminal Appeals stated:

> When a defendant is a party ... to the use or exhibition of a deadly weapon, there must be a specific finding by the trier of facts that the defendant himself used or exhibited the deadly weapon (emphasis added).

In the credit union robbery, the evidence is clear that appellant was not a party, but was the principal actor. There was no evidence presented that supported the submission of the case on the theory that appellant was only a party to the use or exhibition of the deadly weapon and not the primary actor. Both witnesses to the robbery testified that it was appellant who held the gun to Ms. Dowding's head, and the accomplice only sprayed mace. There was no testimony that the accomplice used or exhibited a firearm. We therefore *are* able to determine that the jury must have found appellant guilty on the theory that he was the primary actor in the credit union robbery. *Cf. Flores,* 690 S.W.2d at 283. Because the evidence in the credit union robbery clearly supports appellant's guilt as the primary actor and not a party, *Govan,* 682 S.W.2d at 570–71, no specific wording is required in making a finding that a deadly weapon was used. *Travelstead,* 693 S.W.2d at 402. The trial judge had the evidence of appellant's involvement before him at the punishment hearing, therefore he was justified in entering an affirmative finding on the use of a deadly weapon on the judgment in the credit union robbery, Cause no. 618,525. *Fann,* 702 S.W.2d at 604. We overrule appellant's first point of error.

### EVIDENCE OF COMPLAINANT'S SUBSEQUENT MEDICAL PROBLEMS

In his third point of error, appellant argues that the trial court erred in allowing evidence of a heart attack suffered by Ms. Dowding nineteen days after the credit union robbery. Prior to the State's offering the evidence, a hearing was held outside the presence of the jury to determine if the evidence should be admitted. At this hearing, appellant objected that the evidence was irrelevant to the issue of whether Ms. Dowding was in fear for her life on the day of the robbery. The State countered with the argument that it is common knowledge that physical ailments can be the result of stress. The trial court overruled appellant's objection and allowed the State to offer the evidence.

Evidence is relevant when it has any tendency to make the existence of any fact more probable or less probable than it would have been without the evidence. TEX. R.CRIM.EVID. 401. If the trial court determines that evidence is irrelevant, then the evidence is absolutely inadmissible and the

trial court has no discretion to admit it. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (opinion on reh'g); TEX. R.CRIM.EVID. 402. On the other hand, if the trial court determines that the evidence is relevant, the evidence should be admitted unless the record plainly shows that its potential for unfair prejudice substantially outweighs its probative value. *Fuller v. State,* 829 S.W.2d 191, 198 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); *Montgomery,* 810 S.W.2d at 389; TEX.R.CRIM.EVID. 403. The trial court is afforded the discretion to exclude or admit evidence, and the appellate court should not set aside the trial court's ruling absent a showing in the record that the trial court abused its discretion by acting in an arbitrary and capricious manner. *Montgomery,* 810 S.W.2d at 379–80; *Rankin v. State,* 821 S.W.2d 230, 233 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

In the case before us, it initially appeared at the time of the evidentiary hearing that the evidence of Ms. Dowding's heart attack was relevant, because it had a tendency to prove that she was in fear of her life during the robbery, and had the heart attack as result of the stress she suffered. Thus, there was no abuse of discretion on the part of the trial court in admitting the evidence. However, after Ms. Dowding testified about her heart attack, she went on to testify that at the time she had heart surgery, it was revealed that her heart problems and high blood pressure were the result of her having high cholesterol. This testimony had the effect of rendering the evidence about her heart attack irrelevant to the issue of whether she was in fear for her life on the day of the robbery, since the heart attack was the result of high cholesterol and not stress from the robbery. If, after proof on the question is received, the evidence does not support a finding that the question is true, the jury should not be allowed to consider that evidence, and a motion to strike should be granted to withdraw the evidence from the

jury's consideration. *Fuller,* 829 S.W.2d at 198. However, even though the evidence about Ms. Dowding's heart attack was vulnerable to a motion to strike when it became obvious it was irrelevant, appellant made no such motion at the conclusion of the testimony. He has therefore waived his right of appellate review by failing to move that the testimony be stricken. *See Fuller,* 829 S.W.2d at 198. Because the trial court was within its discretion in making the initial decision to admit the evidence, and lacking a motion to strike the testimony when it became obvious that it was irrelevant, we overrule appellant's third point of error.

## APPELLANT'S POST–ARREST STATEMENT TO POLICE

In his fourth and fifth points of error, appellant asserts that the trial court erred in allowing the State to introduce evidence of a statement made by appellant to the police following his arrest. He initially argues that the statement is hearsay, and does not qualify for any of the exceptions to the hearsay prohibition. He also argues that the statement should not have been allowed into evidence because it was irrelevant and prejudicial.

Appellant was arrested by Sergeants Wilkerson and Zahn, who immediately read him his legal *Miranda* warnings.[2] Without any questioning or prompting by the officers, appellant blurted out "All these snitches are making your job too easy." Over the objection of defense counsel, the State was allowed to introduce this statement into evidence.

We first address appellant's contention that the statement was inadmissible hearsay. Appellant makes this argument on appeal, but made no such objection at the evidentiary hearing. The only reference we are able to find in the record that pertains to hearsay is a comment made by the prosecutor during the hearing that appellant's statement was a statement against interest.[3]

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. *See* TEX.R.CRIM.EVID. 803:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(24) **Statement against interest.** A statement

However, this assertion was not made in answer to any hearsay objection by the defense. An objection on appeal that does not comport with the objection made at trial preserves nothing for appellate review. *Fuller v. State*, 827 S.W.2d 919, 928 (Tex. Crim.App.1992); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986); *Mayfield v. State*, 828 S.W.2d 568, 570 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

■ In any event, the statement made by appellant was not hearsay because it was not offered for the truth of the matter asserted. *See* Tex.R.Crim.Evid. 801(d). The statement was offered for the purpose of showing that the defendant made the statement, not that snitches were, in fact, making the job of the police easier. An out of court statement offered to show *what* was said, rather than the *truth* of what was said is not hearsay. *Livingston v. State*, 739 S.W.2d 311, 331 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Jordan v. State*, 852 S.W.2d 689, 693 (Tex. App.—Houston [14th Dist.] 1993, pet. granted). We overrule appellant's fourth point of error.

■ Appellant's fifth point of error, which alleges that the trial court improperly admitted the statement because it was irrelevant and prejudicial, was preserved for review. At the hearing, defense counsel argued that the statement was not related to these particular robberies, and that it would be prejudicial for the jury to hear the statement. Although these arguments did not precisely invoke the protections of Texas Rules of Criminal Evidence 402 and 403, the trial court was sufficiently apprised of the nature of appellant's objections. *Montgomery*, 810 S.W.2d at 387; *Zillender v. State*, 557 S.W.2d 515 (Tex.Crim.App.1977).

■ As discussed above in relation to point of error number three, evidence is relevant if it has any tendency to make the existence of any fact more probable or less probable than it would have been without the

evidence, Tex.R.Crim.Evid. 401, and irrelevant evidence is inadmissible. Tex.R.Crim. Evid. 402. If evidence is relevant, it may be excluded if the opponent of the evidence is able to show that the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Montgomery*, 810 S.W.2d at 389; Tex.R.Crim.Evid. 403. The trial court is afforded substantial discretion in its decision to admit or exclude evidence. *Montgomery*, 810 S.W.2d at 379.

■ We first note that although appellant made the statement while he was in custody, the statement is admissible because the record shows it was not the product of a custodial interrogation, and was given freely and voluntarily, without compulsion or persuasion. *Shiflet v. State*, 732 S.W.2d 622, 623 (Tex.Crim.App.1985); *Edwards v. State*, 813 S.W.2d 572, 577–78 (Tex.App.—Dallas 1991, pet. ref'd).

Appellant argues that the statement was not relevant, because it was not shown to have been related to the offenses for which appellant was arrested. He argues that because appellant was not aware when he made the statement that informants had aided in his apprehension, the statement was ambiguous and was simply a general statement with no relevance to the particular offenses. The State counters with the argument that the statement was offered to show the circumstances surrounding appellant's arrest and how he responded to his capture. It also argues that appellant's statement is relevant to show appellant's awareness of his culpability for the offenses, and that upon his arrest he knew someone must have informed the police of his involvement with the robberies.

While we do not find that appellant's statement definitively established awareness of his culpability, we do find that the statement meets the statutory definition of relevant evidence. The evidence has a slight tendency to make the fact of appellant's guilt more probable than not, because the jury could

which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to

make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true.

have found that the statement, even though vague, indicated that appellant had a guilty mind about the robberies. It provides a "small nudge" toward proving appellant's culpability in the robberies. *See Montgomery*, 810 S.W.2d at 381. Therefore, we find that appellant's statement was relevant, and that the trial court did not err in allowing the statement into evidence. We overrule appellant's fifth point of error.

### DYING DECLARATION

■ In his sixth point of error, appellant argues that the trial court erred in allowing into evidence as a dying declaration the statement made by appellant's accomplice in the pawn shop robbery after he was shot by Mr. Horowitz. In his seventh point of error, appellant asks this Court to find ineffective assistance of counsel if it holds that counsel failed to preserve error by objecting that the statement was not a dying declaration.

Officer Charles Hudson, of the Houston Police Department, testified that he responded to the holdup alarm at Mr. Horowitz's pawn shop. When he arrived, he found a man, later identified as Lee Blackshear, who had been shot and was laying on the ground outside the shop. Officer Hudson testified that Blackshear told him he could not move anything on his body, and that he was dying. When Officer Hudson asked him what happened, Blackshear replied that he robbed the pawn shop with "Junior." (Appellant later testified that he is called "Junior" by his friends.)

Prior to Officer Hudson's testimony, the court held a hearing outside the jury's presence to determine the admissibility of Blackshear's statement. At the hearing, defense counsel objected to the introduction of the testimony on two grounds: First, that the officer did not ask Blackshear if he thought he was dying, or if he wanted to make a statement; and second, that "Junior" could be anyone. The State, in its brief to this Court, contends that appellant has not preserved error for review because appellant is now arguing on appeal that the statement does not fit the statutory definition of the dying declaration exception to the hearsay rule. However, when the State sought to

introduce the statement into evidence before the jury, defense counsel made the following objection:

Judge, we'd again object to any statements made by the person as being hearsay and not a dying declaration—if that's what the officer intends to introduce.

The trial court overruled the objection, and Officer Hudson went on to recount what Lee Blackshear had said to him.

■ A specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on the objection, and to afford opposing counsel an opportunity to supply other testimony. *Maynard v. State*, 685 S.W.2d 60, 64–65 (Tex.Crim.App.1985). Thus, a complaint is preserved for review when the record adequately shows that the trial judge and opposing counsel were aware of the substance of a defendant's objection, and the correct ground of exclusion was obvious. *Thomas v. State*, 723 S.W.2d 696, 700–701 (Tex.Crim.App. 1986); *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Although appellant's objection at the evidentiary hearing was less than precise in apprising the trial judge and the State of the substance of the objection, appellant's objection at the time the testimony was introduced was clear and unambiguous. We find that appellant preserved the issue for review. Thus, we decline to address appellant's seventh point of error, which asks this Court to find ineffective assistance of counsel if we find that error was not preserved for review on this issue.

We now turn to the substance of appellant's sixth point of error: that the statement made by Lee Blackshear does not qualify as a dying declaration exception to the hearsay rule. A statement must meet three requirements before it is admissible as a dying declaration exception to the hearsay rule: (1) the declarant must be unavailable; (2) the declarant, at the time he makes the statement, must believe his death is imminent; and (3) the statement must concern the cause or circumstances of the potential impending death. Tex.R.Crim.Evid. 804(b)(2); *see also Williams v. State*, 800 S.W.2d 364, 368 (Tex. App.—Fort Worth 1990, pet. ref'd, 805 S.W.2d 474 (Tex.Crim.App.1991)). From the

record we find the three criteria are met. First, Lee Blackshear died approximately one week following his being shot in the pawn shop robbery; therefore, he was unavailable to testify at appellant's trial. *See* TEX.R.CRIM.EVID. 804(a)(4). Second, Blackshear told Officer Hudson that he could not move any part of his body, and he believed he was dying. *See Green v. State,* 840 S.W.2d 394, 411 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993) (victim's statement "I'm dying" indicated he believed his death was imminent). Third, in response to Officer Hudson's asking what happened, Blackshear replied that he and Junior had robbed the pawnshop.

▮ Appellant argues that Blackshear's statement cannot qualify as a statement concerning the cause or circumstances of the declarant's death. He cites *Rushing v. State,* 813 S.W.2d 646 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); and *Hayes v. State,* 740 S.W.2d 887 (Tex.App.—Dallas 1987, no pet.), for the proposition that a dying declaration must be offered for the purpose of identifying the person who caused the declarant's belief that he is dying. In other words, he argues that the statement is only admissible to prove who shot the declarant, not for identification testimony in general. We disagree. Although *Rushing* and *Hayes* allowed testimony regarding the identity of the assailants of the declarants as dying declaration exceptions to the hearsay rule, neither case limits the exception to the situation where the declarant identifies the person who stabbed or shot him.

In addition, a reading of the plain language of Rule 804(b)(2) does not support appellant's construction. There is no requirement in the Rule that the statement by the declarant concern who caused his belief in impending death. Rather, the Rule allows the statement into evidence if it concerns the cause *or circumstances* of the belief in impending death. In the case before us, Officer Hudson asked Blackshear *"What happened?"* and Blackshear responded with an explanation of the *circumstances* surrounding how he came to be laying in the street bleeding from a

gunshot wound: he and Junior participated in a robbery. Blackshear's statement satisfies all three of the requirements of Rule 804(b)(2), and therefore qualifies as a dying declaration exception to the hearsay rule.

Appellant also contends that to be admissible under the dying declaration exception, the statement must be one to which Blackshear could have testified had he lived, citing *Contreras v. State,* 745 S.W.2d 59 (Tex. App.—San Antonio 1987, no pet.). The statement is inadmissible, he maintains, because *if* Blackshear had lived, *and* was jointly tried with appellant, *and* did not testify, his incriminating statement would be barred by the Confrontation Clause of both the Texas and Federal Constitutions.[4] *See Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). However, in *Contreras,* the issue was the personal knowledge of the declarant, not whether constitutional constraints would prohibit introduction of his statement. We find appellant's scenario of a non-testifying co-defendant to be speculation in which this Court need not indulge.

Blackshear's statement qualifies as a dying declaration exception to the hearsay rule, and the trial court did not err in allowing the statement to be admitted into evidence. We overrule appellant's sixth point of error.

## LESSER INCLUDED OFFENSE

▮ In his eighth point of error, appellant contends that the trial court erred in not including in the jury charge for the pawn shop robbery the lesser included offense of robbery. Appellant argues that in the evidence relating to the pawn shop robbery, there is some evidence in the record from which the jury could have reasonably concluded that appellant did not use or exhibit a deadly weapon. *See Saunders v. State,* 840 S.W.2d 390, 391–92 (Tex.Crim.App.1992).

▮ If the facts presented at trial raise the issue of a lesser included offense and a jury charge is properly requested, then a charge on the issue must be given. *Mitchell v. State,* 807 S.W.2d 740, 742 (Tex.Crim. App.1991). A two-step analysis is required in making a determination of whether the

---

4. U.S. CONST. VI; TEX. CONST. art. I, § 10.

evidence raises a lesser included offense: (1) the lesser offense must be included within the proof necessary to establish the offense charged; and (2) there must be some evidence, from any source, that raises a fact issue on whether the defendant is guilty of only the lesser offense. *Ramos v. State*, 865 S.W.2d 463, 465 (Tex.Crim.App.1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim. App.1981) (opinion on reh'g).

Here, the first prong of the two-step test is clearly met. To prove aggravated robbery, the State must first prove robbery. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon Supp. 1994). Appellant contends that because there was evidence presented at his trial that something was wrong with the gun he pointed at Mr. Horowitz during the robbery (the bullets kept falling out and the gun was in pieces), the jury therefore had evidence before it that appellant did not exhibit a "deadly weapon." Appellant's contention lacks merit for two reasons. First, the State presented testimony from a firearm expert, Ray W. Klein, that although the gun exhibited by appellant during the robbery was missing some pieces, it was still capable of firing. Thus, the weapon fit the statutory definition of a deadly weapon because it was "capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(11)(B). Second, a handgun is a "firearm" and therefore is per se a deadly weapon, even if it is incapable of being fired. *Walker v. State*, 543 S.W.2d 634, 636–37 (Tex.Crim.App.1976); TEX.PENAL CODE ANN. § 1.07(a)(11)(A).

Because the evidence shows that appellant exhibited the gun during the robbery, and no evidence was presented to the contrary, there was no evidence from which the jury could have found that appellant, if guilty of anything, was guilty only of the lesser offense of robbery. *See Ramos*, 865 S.W.2d at 465. The trial court properly denied appellant's request for a jury charge on the lesser included offense. We overrule appellant's eighth point of error.

The judgment of the trial court is affirmed as modified.